Johnny Lewis THOMAS *v.* STATE of Arkansas

CR 92-871                                      846 S.W.2d 168

Supreme Court of Arkansas
Opinion delivered January 25, 1993

*Daniel D. Becker* and *Terri L. Harris*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Johnny Lewis Thomas, appeals a judgment of the Garland Circuit Court convicting him of rape and kidnapping. Appellant was sentenced to life in prison on the rape charge and forty years on the kidnapping charge. As his sole point for reversal of the judgment, he contends the trial court erred in denying his motion for directed verdict on the kidnapping charge. We find no error and affirm.

At the close of the state's case, appellant moved for a

directed verdict on the kidnapping charge arguing there was insufficient evidence that appellant deprived the victim of more of her liberty than was necessary for him to commit the rape. Appellant emphasized the fact that the victim voluntarily entered his car. The trial court denied appellant's motion concluding there was sufficient evidence indicating that the restraint on the victim's liberty was greater than that which the state was obligated to prove on the rape charge. The trial court likewise denied appellant's motion for directed verdict made at the close of all evidence.

██ We treat a challenge to the denial of a motion for directed verdict as a challenge to the sufficiency of the evidence. *Lukach* v. *State*, 310 Ark. 119, 835 S.W.2d 852 (1992). The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict; substantial evidence must be forceful enough to compel a conclusion one way or the other beyond mere suspicion and conjecture. *Id.* On appellate review, it is only necessary for us to ascertain that evidence which is most favorable to appellee and, if there is substantial evidence to support the verdict, we affirm. *Id.*

As viewed most favorably to the state, the evidence reveals that at approximately 7:25 a.m. on October 14, 1991, the fifteen-year-old victim was waiting at the bus stop for a ride to Hot Springs High School. As she was waiting, a car approached her. Appellant was driving the car. Appellant's son, Robert Thomas, and appellant's nephew, Melvin Newman, were passengers in the car. The victim knew Robert Thomas from school. The three men offered the victim a ride to school and the victim accepted. The victim then voluntarily joined Melvin Newman in the back seat of the car.

All three passengers testified that appellant was going to drive both Robert Thomas and the victim to school. However, appellant drove past the turn he should have made to reach the school. When the victim questioned appellant's route to the school, he told her he was going the back way. Appellant then steered the car down a dirt road. All three passengers requested that appellant go to the school. Appellant ignored these requests. The victim began to cry because she was scared.

The victim stated there were no houses, only woods, around

the dirt road. She was not sure of the length of the drive, but stated it could have been about ten minutes. She stated that when appellant was driving down the dirt road, she was scared and attempted to get out of the car. Appellant also told her he would kill her if she did not stop hitting and kicking him.

Appellant stopped the car and ordered his son and his nephew to get in the back seat. The victim got out of the car and was standing outside the front passenger door when appellant stripped her of her clothing. Appellant began kissing and fondling the victim while the two males were in the back seat of the car. Appellant then ordered them to leave because "he did not need an audience," but to return to the car on his demand. Appellant then threatened the victim with a knife and raped her.

Appellant's son and nephew corroborated the victim's testimony. They both testified that Robert Thomas and the victim requested appellant to turn the car around and take them to school. Robert Thomas stated the victim was nervous and crying while riding down the dirt road. Both boys also testified they were either crying or almost crying during the incident.

In the present case, to prove kidnapping the state must show that appellant restrained the victim so as to interfere substantially with her liberty with the purpose of engaging in sexual contact. Ark. Code Ann. § 5-11-102(a)(4) (1987). We have interpreted this statute as requiring the restraint of the victim's liberty to exceed that restraint which is normally incidental to the rape. *Summerlin* v. *State*, 296 Ark. 347, 756 S.W.2d 908 (1988).

Appellant specifically contends the state failed to show that he restrained the victim in excess of the restraint that was incidental to the rape. He relies heavily on *Shaw* v. *State*, 304 Ark. 381, 802 S.W.2d 468 (1991).

In *Shaw*, the victim agreed to attend a business dinner with Shaw and voluntarily entered Shaw's car. Instead of going to dinner, Shaw drove to a liquor store. Under false pretense, Shaw then drove to a rural camp site where he threatened his victim with a gun and raped her on the tailgate of his truck. According to the *Shaw* majority opinion, it was not until Shaw pulled the gun on her that the victim revoked her consent to Shaw's actions. Based on those facts, this court held there was no substantial

interference with the victim's liberty to warrant a separate conviction for kidnapping.

■ *Shaw* is not controlling of the present case because the facts, although somewhat similar, are distinguishable. It is true that both victims voluntarily entered their rapists' automobiles. But this is where the similarity ends. In *Shaw*, the victim continued to consent to her rapist's actions when he deviated from the agreed-upon destination. For example, when Shaw wanted to go to a liquor store instead of eating dinner, the victim consented. Again, when Shaw deviated from his plan of doing some work by driving to a rural camp site, the victim consented. However, unlike the victim in *Shaw*, the victim in the present case began to revoke her consent to her rapist's actions as soon as it became apparent he was not driving her to school — the agreed-upon destination. Thus, from the point at which appellant missed the turn to the school, appellant restrained the victim. He kept her in the car while she was kicking and hitting him and pleading with him to take her to school. He drove her at least ten minutes from the City of Hot Springs to a wooded area and raped her there. We hold such actions resulted in more restraint of the victim than would be normally incidental to the rape.

In reaching our conclusion, we emphasize the fact that appellant continued to remove the victim from the point of their initial contact after she expressed a desire to be returned to the agreed-upon destination. Appellant did not rape the victim at the point of initial contact as was the case in *Summerlin*, 296 Ark. 347, 756 S.W.2d 908, nor at the point where the victim revoked her consent to appellant's actions as was the case in *Shaw*, 304 Ark. 381, 802 S.W.2d 468.

The chancellor did not err in denying appellant's motion for directed verdict on the kidnapping charge. The foregoing evidence is substantial and shows the restraint on the victim's liberty to have exceeded that which was incidental to the rape.

The record has been examined in accordance with Ark. Sup. Ct. R. 11(f), and it has been determined that there were no rulings adverse to the appellant which constituted prejudicial error.

The judgment is affirmed.